Filed 3/15/22  Planet Clair v. American Honda Motor Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| PLANET CLAIR LLC,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>        Defendant and Respondent. | B308151<br><br>(Los Angeles County Super. Ct. No. 20STCV25783) |

_____

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Reversed and remanded.

The Bravo Law Firm and Nicholas A. Bravo for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Wendy S. Dowse, Trevor J. Ingold, Jessica L. Barakat and Jordan R. Fisher for Defendant and Respondent.

_____

Planet Clair LLC appeals the judgment entered after the trial court sustained without leave to amend American Honda Motor Co., Inc.'s demurrer to Planet Clair's complaint for breach of express and implied warranties pursuant to the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.)[1] (Song-Beverly Act or Act). We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Complaint*

On July 9, 2020 Planet Clair filed a complaint against American Honda alleging causes of action under the Song-Beverly Act for breach of the implied warranty of merchantability and breach of the express warranty arising from its purchase in March 2020 of a new Honda Passport from an authorized California Honda dealer. The express warranty included warranties the vehicle would be free from all defects in material and workmanship and would be fit for the ordinary purposes for which it was intended. The complaint sought restitution or replacement of the vehicle, actual damages, civil penalties as provided in the Song-Beverly Act and attorney fees and costs.

According to the complaint Planet Clair purchased the vehicle "for personal, family, and/or household purposes of its principal." Soon after taking possession of the vehicle, Planet Clair "presented the vehicle for warrantable non-conformities/defects substantially affecting the use, value and safety of the vehicle, *including but not limited to*: [¶] defective and/or malfunctioning transmission and/or powertrain components and/or systems; [¶] additional defects which are

---

[1] Statutory references are to this code unless otherwise noted.

unknown to Plaintiff as they have yet to be properly identified, diagnosed, and repaired." The complaint alleged, "Plaintiff delivered the Vehicle to Manufacturer or its authorized repair facilities Defendants [*sic*], and each of them, failed to service or repair the Vehicle to match the written warranty after a reasonable number of opportunities to do so."

2. *The Demurrer*

On August 17, 2020 American Honda demurred to the complaint, arguing, among other matters, Planet Clair had failed to sufficiently allege the Song-Beverly Act applied to the purchased vehicle. American Honda contended the Song-Beverly Act applied to the purchase of a vehicle by a corporate entity only if the vehicle was used for a business purpose. (See § 1793.22, subd. (e)(2).) Because the complaint alleged the vehicle was used by Planet Clair's principal for his or her personal, family and/or household purposes, American Honda argued, the Song-Beverly Act's provisions did not apply. Further, American Honda asserted, the complaint should be dismissed without leave to amend because, having pleaded personal use of the vehicle, Planet Clair could not amend to plead the vehicle was used for business purposes.

3. *The Trial Court's Ruling Sustaining the Demurrer Without Leave To Amend and Subsequent Judgment of Dismissal*

During the hearing on the demurrer Planet Clair argued personal use of the vehicle by Planet Clair's principal did not preclude application of the Song-Beverly Act because such use may simultaneously serve a business purpose. After taking the

3

matter under submission the trial court sustained the demurrer without leave to amend.[2]

## DISCUSSION

### 1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) However, we are not required to accept the truth of the legal conclusions pleaded in the complaint. (*Mathews*, at p. 768; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons (*Aubry v.*

---

[2] We augment the record to include the October 20, 2020 entry of a judgment of dismissal on our own motion pursuant to California Rules of Court, rule 8.155(a)(1)(A).

Planet Clair's October 1, 2020 notice of appeal was filed after entry of the September 21, 2020 order sustaining the demurrer without leave to amend, a nonappealable order, and before the October 20, 2020 judgment of dismissal. We treat the notice of appeal, otherwise premature, as having been filed immediately after entry of the judgment of dismissal. (Cal. Rules of Court, rule 8.104(d)(2).)

*Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 848), but liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726; see *Schifando*, at p. 1081.) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his [or her] complaint."'" (*Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at p. 970.) A plaintiff may demonstrate for the first time to the reviewing court how a complaint can be amended to cure the defect. (Code Civ. Proc., § 472c, subd. (a) ["[w]hen any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made"]; see *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132 [plaintiff may carry burden of proving an amendment would cure a legal defect for the first time on appeal]; *Rubenstein v. The Gap, Inc.* (2017) 14 Cal.App.5th 870, 881 ["'[w]hile such a showing can be made for the first time to the reviewing court [citation], it must be made'"]; *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)

2. *Governing Law*

"Enacted in 1970, the Act 'regulates warranty terms, imposes service and repair obligations on manufacturers,

5

distributors, and retailers who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties. [Citations.] It supplements, rather than supersedes, the provisions of the California Uniform Commercial Code. [Citations.]' [Citations.] '[T]he Act is manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action.'" (*Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, 1486.) Section 1794 governs civil actions under the Song-Beverly Act and provides in part: "(a) Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief."[3]

"Under the implied merchantability warranty, 'every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable.' (§ 1792.) The warranty '"arises by operation of law"' and therefore applies despite its omission from a purchase contract." (*Brand v. Hyundai Motor America* (2014) 226 Cal.App.4th 1538, 1545.)

---

[3] "Buyer" is defined as "any individual who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail." (§ 1791, subd. (b).) "Consumer goods" means "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." (§ 1791, subd. (a).)

As it pertains to express warranties of new motor vehicles the Song-Beverly Act requires a manufacturer "that gives an express warranty on a new motor vehicle to service or repair that vehicle to conform to the warranty. If the manufacturer is unable to do so after a reasonable number of attempts, the purchaser may seek replacement of the vehicle or restitution in an amount equal to the purchase price less an amount directly attributable to use by the purchaser prior to the discovery of the nonconformity." (*Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 497, fn. 2; see § 1793.2, subd. (d)(2).)[4]

> 3. *The Complaint Did Not Sufficiently Allege the Vehicle Was Bought or Used Primarily for Business Purposes; Planet Clair Should Be Given Leave To Amend*

As discussed, the repair or replace provision of section 1793.2, subdivision (d)(2), applies only to a "new motor vehicle," which is defined as "a new motor vehicle that is bought or used primarily for personal, family, or household purposes. 'New motor vehicle' also means a new motor vehicle with a gross vehicle weight under 10,000 pounds that is bought or used primarily for business purposes by a person, including a

---

[4] Section 1793.2, subdivision (d)(2), states: "If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B). However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle."

partnership, limited liability company, corporation, association, or any other legal entity, to which not more than five motor vehicles are registered in this state."[5] (§ 1793.22, subd. (e)(2).)

As an initial matter, Planet Clair argues the definition of "new motor vehicle" contained in section 1793.22, subdivision (e)(2), applies only to claims for breach of an express warranty. Claims for breach of an implied warranty pursuant to sections 1792 and 1794, it contends, are not limited by the new motor vehicle definition, but may be asserted by any vehicle purchaser. While Planet Clair is correct that the new motor vehicle definition is contained only in the provisions regarding express warranties, the Act's general definitions, which apply to the implied warranty provisions, continue to define "buyer" as an individual and "consumer goods" as those used for personal, family or household purposes. (See § 1791, subds. (a) & (b).)

Focusing on this aspect of the statutory language, at oral argument American Honda contended the implied warranty provisions of the Act applied only to individual purchasers and

_____

[5] While the Song-Beverly Act was initially intended to protect individual consumers purchasing goods primarily for personal, family or household purposes, the definition of "new motor vehicle," added in 1998, was amended in 2000 to include certain corporate entities purchasing vehicles for business purposes as a means of expanding protection to small businesses. (See *Park City Services, Inc. v. Ford Motor Co., Inc.* (2006) 144 Cal.App.4th 295, 306-308; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1718 (1999-2000 Reg. Sess.) as amended May 4, 2000, p. 4 ["[t]he sponsor of the bill, Consumers for Auto Reliability and Safety, state that SB 1718 will improve protection for self-employed entrepreneurs and small business owners, enhance motor vehicle safety, and enable more lemon owners to use the auto manufacturers' dispute resolution programs"].)

not corporate purchasers. Addressing this definitional discrepancy, our colleagues in Division Two of the Fourth District explained, "We can avoid absurdity only by adding a gloss to the plain language of the statute. Thus, even though 'buyer' is still defined as an individual purchaser of goods for personal use, it must be deemed to include some corporate purchasers of new motor vehicles for business use—namely, those to whom 'not more than five motor vehicles are registered in this state.'" (*Park City Services, Inc. v. Ford Motor Co., Inc.,* (2006) 144 Cal.App.4th 295, 306-307 ["we have already established that, when the Legislature extended the Song-Beverly Act to business vehicles, it was not necessarily writing with its sharpest pen"].) Contrary to the position taken at oral argument, American Honda, citing *Park City Services, Inc.,* conceded in its brief that "buyer" must be interpreted to include corporate entities whose purchases meet the definition of "new motor vehicle." We agree with the court's reasoning in *Park City Services, Inc.* and American Honda's concession that the Act's implied warranty provisions must be interpreted to apply, at the very least, to purchasers meeting the "new motor vehicle" definition of section 1793.22. Because Planet Clair should be given an opportunity to allege its purchase qualified as a "new motor vehicle," we need not determine on this appeal whether the Act's implied warranty provisions would apply to a corporate purchaser who could not meet that definition.

Turning to the definition of "new motor vehicle," American Honda argued, and the trial court ruled, the Song-Beverly Act did not apply in this case because a corporate entity's purchase of a vehicle is covered only if the vehicle is purchased primarily for business purposes and Planet Clair alleged the vehicle was

9

purchased "for personal, family, and/or household purposes of its principal." This analysis of Planet Clair's complaint was correct. However, contrary to American Honda's arguments, a corporate entity purchasing a vehicle for the personal use of its principal could certainly have a business purpose, for example as part of an executive's compensation package or as a way of ensuring an employee has reliable transportation to visit clients. (See, e.g., *Moreno v. Visser Ranch, Inc.* (2018) 30 Cal.App.5th 568, 579-580 [finding triable issue of material fact as to whether employee's use of company-owned vehicle for personal business had benefit to company of allowing employee to immediately respond to maintenance calls]; *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 529-530 [car furnished by employer included in gross income].) The fact the vehicle may be used by an employee for personal, family or household purposes is not necessarily inconsistent with its acquisition by a corporate entity for a business-related purpose.

Planet Clair seeks leave to amend the complaint, as it did in the trial court, asserting it could more clearly allege its purchase satisfies the statutory definition. It should be given an opportunity to do so. However, under the circumstances of this case, an amendment containing no more than the statutory language would be insufficient in light of the prior pleading. To satisfactorily amend the complaint Planet Clair must allege, in good faith, underlying facts that would support its contention the vehicle was bought or used primarily for a business purpose.

In addition, Planet Clair must allege the additional elements required by the definition of "new motor vehicle," specifically that the vehicle weighed less than 10,000 pounds and Planet Clair had fewer than five motor vehicles registered in

California.  (§ 1793.22, subd. (e)(2).)  Planet Clair has represented it can allege these facts, and it should be given an opportunity to do so.[6]  (See *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority, supra,* 19 Cal.App.5th at p. 1132.)

> 4. *The Complaint Sufficiently Alleged American Honda Had a Reasonable Number of Attempts To Repair the Vehicle*

As discussed, before the purchaser of a new motor vehicle may seek replacement or restitution, it must allow the manufacturer "a reasonable number of attempts" to fix the problem.  (§ 1793.2, subd. (d)(2).)  The Act does not define what constitutes a reasonable number of attempts, but the plain language of the statute makes clear that more than one attempt is necessary.  (See *Silvio v. Ford Motor Co.* (2003) 109 Cal.App.4th 1205, 1208 ["[t]he statute does not require the manufacturer to make restitution or replace a vehicle if it has had only one opportunity to repair that vehicle"].)

---

[6]    American Honda has requested we take judicial notice of the sales contract entered by Planet Clair, on which Planet Clair failed to check the box indicating the primary use of the vehicle was for business or commercial purposes.  We deny the request.  The omission of this representation in the sales contract is not fatally inconsistent with the allegations in Planet Clair's complaint; and, in any event, resolution of inconsistent statements is not appropriate on demurrer.  (See *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375 ["'[w]hen judicial notice is taken of a document, . . . the truthfulness and proper interpretation of the document are disputable'"].)

Here, the complaint alleged American Honda failed to repair the vehicle "after a reasonable number of opportunities to do so." American Honda argues this allegation is conclusory and cannot withstand demurrer. While the allegation is again lacking in detail, it sufficiently alleges the ultimate fact, that more than one opportunity to repair was afforded, which is ""'sufficient to acquaint [the] defendant with the nature, source and extent of [the] cause of action.'""" (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1099.) In addition, ""'less particularity is required where the defendant may be assumed to have knowledge of the facts equal to that possessed by the plaintiff.'""" (*Ibid.*) That is the case here, where American Honda's own service records should provide detail regarding its repair attempts on the vehicle.[7] Accordingly, the complaint adequately alleged reasonable repair attempts were made.

American Honda also argues Planet Clair failed to allege any facts that would qualify for application of the Act's presumption that a reasonable number of attempts have been made to repair the vehicle. Section 1793.22, subdivision (b), sets forth three circumstances under which "[i]t shall be presumed that a reasonable number of attempts have been made to conform

---

[7] American Honda has requested we take judicial notice of an invoice for service of the subject vehicle from May 2020. American Honda argues the invoice conclusively shows the vehicle was presented for repairs only once, thus negating any allegation to the contrary. We deny the request. Not only is the invoice not appropriate for consideration on a demurrer, but also the document, without additional evidence, does not establish that no other attempts at repair were made.

a new motor vehicle to the applicable express warranties."[8] However, this section sets forth a rebuttable presumption affecting the burden of proof, not a definition of "reasonable attempts." (§ 1793.22, subd. (b)(3) ["[t]his presumption shall be a rebuttable presumption affecting the burden of proof"].) Accordingly, Planet Clair was under no obligation to plead evidentiary facts establishing application of the presumption. (See *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872 ["each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged"].)

---

[8] The presumption applies if, within 18 months from delivery to the buyer or 18,000 miles on the odometer of the vehicle, whichever occurs first, one or more of the following occurs: (1) "[t]he same nonconformity results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven and the nonconformity has been subject to repair two or more times"; (2) "[t]he same nonconformity has been subject to repair four or more times"; or (3) "[t]he vehicle is out of service by reason of repair of nonconformities . . . for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer." (§ 1793.22, subd. (b).)

## DISPOSITION

The judgment is reversed, and the cause remanded with directions to the trial court to vacate its order sustaining the demurrer without leave to amend and to enter a new order sustaining the demurrer with leave to amend. Planet Clair is to recover its costs on appeal.

PERLUSS, P. J.

We concur:

FEUER, J.

WISE, J.*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.